Johnson, J.
The plaintiffs’ cases are founded on the assumption that Lane was authorized by the defendant to purchase the goods on his account, and whether ho was or not, constitutes the leading question in this case. The absence of the proof of any special authority for that purpose, is in itself conclusive that none such was given, and in addition to this, the converse is as cleax^y proved as it is possible to prove a negative ; in the last conversation he had with defendant he was told not to credit. But the defendant was a merchant tailor, and Lane was employed in his shop as cutter and foreman, and it is contended .for the plaintiffs that this relation between them constituted Lane the defendant’s general agent to contract for him in relation to every thing connected with the business of the shop.
The principal is bound by the acts of his agent done in the regular course of his employment, and if purchasing goods for the use of the shop, regularly and properly belongs to the department which Lane occupied in the defendant’s shop, then of course the defendant is bound ; but otherwise not. The terms ‘cutter and foreman’ by which Lane’s station in tho shop is expressed, do not in themselves necessarily indicate an authority to bind his principal by purchases made for the use of the shop. As I understand them, they held Lane out to the *309 community as one skilled in the art of,cutting clothes, and confer on him a general superintendence of the work done in the shop. I "profess, however, not to be well informed as to the nature and extent of this agency, and it may import more than I have supposed. The extent of it can only’be resolved by the usages and general understanding of. the community. Mr. Seybring, the only witness who testifies as to this point, says generally, that in the absence of the principal, when no attorney is appointed, the cutter and foreman, when they concentre in the same person, has the care of the business ; and that is in accordance with what I have before stated. But certainly there is nothing in this evidence of the usage and understanding of the community which would have authorised Lane to purchase goods, even for the use of the shop, on the credit of the defendant. Such authority does not," as before observed, obviously arise out of the nature of the agency, and if the general understanding has extended it beyond what it imports, it was incumbent on the plaintiffs to have shown it.
The witness Lane testified that the goods.were appropriated to the use of the defendant, that they, were worked up in his shop and sold to customers for the benefit of the defendant; and "it is insisted that on that account the defendant is liable, conceding that he was not bound by the contract of Lane.
In Exall v. Partridge, 8 Term Rep. 310. Ld. Kenyon denies most authoritatively that one can by a voluntary payment of money for another, make that other his debtor; for he observes, that if I owed a sum of money to a friend and an enemy chose to pay that debt, the latter might convert himself into my creditor, nolens volens, which will not be allowed. And per Lawrence J, “one of the propositions stated by the plaintiff’s counsel certainly cannot be supported, that whoever is benefit-ted by a payment made by another, is liable to an action of assumpsit by that other ; for one person cannot by a voluntary payment raise an assumpsit against another,” and the same principle is again advanced by Ld. Kenyon in Child v. Morley, 8 Term Rep. 613.
The' rule laid down by Saunders, on which the counsel against the motion has mainly relied, is, that when a party derives a benefit from the consideration, it is sufficient, because it is equivalent to a Request; and the examples which he puts in illustration, are when one pays a sum of money or buys goods for me without my knowledge, and afterwards I agree to the payment, or receive the goods, that this is equivalent to a previous request, 1 Saund. 264, note. But 1 apprehend there is nothing in this rule inconsistent with that laid down in Exall v. Partridge. In the case supposed there is an express promise to pay the money advanced without the knowledge of *310 ^ie Prom‘sor> andan actual receipt and acceptance of the goods purchased; and the obligation to pay arises out of the act of the promisor, and not out of the voluntary act of him who pays the money and purchased the goods; and that constitutes the true distinction. Oné cannot make another his debtor against his will; but if the party charged has derived a benefit from money paid or laid out by another, and he promise to pay it, or does any other act from which his assent may be fairly infered, he is liable. There is no evidence that the defendant ever promised to pay the plaintiffs for these goods, or that he ever did any other act from which his assent could be infered. His liability, if he be liable, rests upon the fact that the goods were made up- in his shop and sold to customers on his account. If we were at liberty to substitute our notions of moral right for the rules of law, founded on a broad and general view, of the true interest of society, I should be disposed to think there was some merit in this claim; but upon a closer examination we shall find that however reasonable it may be, it was utterly impracticable as a rule of right. Lane took upon himself, without authority,to purchase goods from the plaintiffs on account of defendant. They were mixed up with other goods of defendant, made into clothes by his workmen and sold to his customers, and according to the most refined notions of equity, the defendant would only be liable to the precise extent to which he was benefited; to ascertain this, the most minute account of every article, and the value of every stitch in making the different garments would be necessary, and it is enough to say, that such an account is utterly impracticable — it is precisely the case of one man’s so mixing up his money or goods with that of another that they cannot be distinguished and separated, and for his wrong lie is subjected to the loss of his goods.
The cases of Edwards v. Smith, 22 Com. Law Rep. 435, Bennett v. Henderson, 3 Com. Law Rep. 470, and Wakefield v. Packington, 12 Com. Law 281, relied on by the counsel, do not appear to me to have any direct bearing on the case. In the two first, the question was, whether the principal was bound by the contract of his agent made in the course of his employment. Here the question is, whether the agent had authority to contract for his principal.
The motion must therefore be granted.
Harpher, J. concurred.